IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LINDA HENDERSON,<br><br>    Plaintiff,<br><br>v.<br><br>FIRST MORTGAGE CORPORATION and FREEDOM MORTGAGE CORPORATION,<br><br>    Defendants. | No. 3:18-cv-00945-K (BT) |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court in this *pro se* civil action are Defendant Freedom Mortgage Corporation's Motion for Judgment on the Pleadings (ECF No. 12) and Defendant First Mortgage Corporation's Motion for Judgment on the Pleadings (ECF No. 17). For the reasons stated, the motions should be granted.

**Background**

On August 27, 2012, Plaintiff Linda Henderson ("Henderson") executed a promissory note payable to First Mortgage Corporation ("First Mortgage"), its successors, and assigns, as evidence of a loan she obtained to purchase a home in Desoto, Texas (the "Property"). *See* Def.'s App., Ex. A at 1-10 (ECF No. 14-1).[1] On

---

[1]     The Court may consider the documents provided in Freedom Mortgage's appendix, *See* Def.'s App., Exs. A-C (ECF Nos. 14-1, 14-2 & 14-3), because Henderson references them in her petition and they are essential to her claims or because they are official public records and the Court can take judicial notice of them. *Collins v. Morgan*

1

the same day, Henderson signed a deed of trust (the "Deed of Trust") naming Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for First Mortgage to secure the loan represented by the promissory note. *Id.*

In September 2015, Henderson lost her job. Pl.'s Original Pet. 2 (ECF No. 1-3). Then, she admits, she became delinquent on her mortgage payments. *Id.* Henderson alleges she contacted First Mortgage to request mortgage assistance while seeking a new job, and, in response a First Mortgage representative purportedly told her that if she found gainful employment she would receive a loan modification. *Id.*

Thereafter, on November 5, 2015, First Mortgage assigned the Deed of Trust to Freedom Mortgage Corporation ("Freedom Mortgage"). Def.'s App., Ex. B at 1-3 (ECF No. 14-2). After the transfer, Henderson claims she worked temporary jobs and continued to update First Mortgage on her financial situation. Pl.'s Original Pet. 2. She even states "there was no problem" until the transfer to Freedom Mortgage, after which time she claims she was denied a loan modification eight times from 2016 to 2018 despite having obtained gainful employment. *Id.* Specifically, she avers Freedom Mortgage told her she was denied a loan modification because Freedom Mortgage mistook her as the owner of Henderson's Chicken, a restaurant in significant debt. *Id.* With the help of a "mortgage assistance agency," Henderson was able to show she did not own

---

*Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

2

Henderson's Chicken. *Id.* 3. Further, she claims Freedom Mortgage agreed to cooperate with First Mortgage to process a new loan modification application for her. *Id.*

On February 3, 2018, however, Freedom Mortgage notified Henderson she did not qualify for loan modification. *Id.* Then, on February 6, 2018, Freedom Mortgage conducted a foreclosure sale of the Property and purchased the Property at that sale. *Id.*; Def.'s Br. 3, ¶ 12 (ECF No. 13). To memorialize the sale, a substitute trustee's deed and affidavit was filed in the real property records of Dallas County, Texas, on February 28, 2018. Def.'s App., Ex. C at 1-3 (ECF No. 14-3).

Despite the foreclosure sale, Henderson remained at the Property. *See* Pl.'s Original Pet. 3. She avers sixty couples and thirty realtors visited the Property for a tour despite the fact that she was still living there. *Id.* On March 7, 2018, Henderson claims a man visited the Property and told her relative who was then present at the Property that the Property needed to be vacated in 24 hours or the locks would be changed. According to Henderson, this individual told Henderson's relative that he was a Freedom Mortgage representative. *Id.*

Two days later, on March 9, 2018, Henderson, proceeding *pro se*, filed a petition in state court naming First Mortgage and Freedom Mortgage as defendants. Specifically, she alleges claims under (1) sections of the Real Estate Settlement Practices Act ("RESPA") and associated regulations; (2) 21 C.F.R. § 203.355, the National Housing Act (the "NHA"), 12 U.S.C. § 1715v, and the

3

Unfunded Mandates Reform Act (the "UMRA"); and (3) the Texas Property Code and the Texas Debt Collection Act (the "TDCA"). *Id*. 3-4. She also requested injunctive relief to enjoin and restrain Freedom Mortgage from "completing the foreclosure sale process." *Id*. 4.

Freedom Mortgage and First Mortgage timely removed the case to federal court. Defendants each filed a separate motion for judgment on the pleadings. Henderson never filed a response to either motion. Therefore, the Court considers the motions without the benefit of a response from Henderson.

## Legal Standard

"The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). To survive a Rule 12(b)(6) challenge, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations must "'raise [the plaintiff's] right to relief above the speculative level,'" but they do not need to be detailed. *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 533 (5th Cir. 2016) (citing *Rosenblatt v. United Way of Greater Hous.*, 607 F.3d 413, 417 (5th Cir. 2010). When evaluating a Rule 12(b)(6) motion, the court's review is limited to the live complaint, any documents attached to that complaint, and any documents attached to the motion to dismiss that are "central to the claim and

referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A document filed *pro se* is to be liberally construed, and a *pro se* [petition], however inartfully pleaded, must be held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## Analysis

### A. Claims Against First Mortgage Corporation

As an initial matter, Henderson has not alleged any wrongdoing by First Mortgage, let alone any facts giving rise to a valid claim against First Mortgage. She even states that she continuously updated First Mortgage about her financial situation and had no problem until the transfer to Freedom Mortgage. Pl.'s Original Pet. 2. The petition's section alleging violations under various statutes and regulations fails to allege any violations by First Mortgage. Therefore because Henderson has not pleaded any claim against First Mortgage, First Mortgage's motion for judgment should be granted.

### B. Claims Against Freedom Mortgage Corporation

*Claims Under RESPA*

Henderson brings her RESPA claim under 12 U.S.C. § 2605. Pl.'s Original Pet. 2. Section 2605 sets out guidelines and notice requirements for the servicing of mortgage loans. Under subsection (f), an individual borrower can pursue damages against a servicer for the servicer's noncompliance with any provision of

§ 2605. 12 U.S.C. § 2605(f). Here, Henderson appears to complain that Freedom Mortgage failed to respond, as required by §§ 2605(e)(1)(A) and (e)(2), to a qualified written request as defined under § 2605(e)(1)(B). Generally, a qualified written request ("QWR") "points out errors in or seeks information related to a servicer's handling of payments." *Dillard v. Mortg. Elec. Registration Sys., Inc.*, 2010 WL 11618069, at *4 (N.D. Tex. Dec. 16, 2010). Moreover, for a communication to be considered a QWR, it must be:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). For a claim under § 2605(e) to survive a motion to dismiss, a plaintiff must describe the communication alleged to be a QWR with sufficient detail so that the Court can determine whether it complied with § 2605(e)(1)(B). *Hill v. Wells Fargo Bank, NA*, 2011 WL 5869730, at *3 (N.D. Tex. Nov. 17, 2011). Furthermore, a plaintiff must allege she suffered actual damages resulting from a violation of § 2605 to state a claim for a RESPA violation related to a QWR. *Henderson v. Wells Fargo Bank, N.A.*, 974 F. Supp. 2d 993, 1017 (N.D. Tex. Sept. 30, 2013).

  Here, Henderson fails to plead facts describing the purported QWR and does not allege she suffered actual damages resulting from a violation of § 2605.

Specifically, she avers the following: "[Freedom Mortgage] was required to provide Plaintiff with an opportunity to cure defaults on the loan. And, [Freedom Mortgage] failed, refused and ignored the existence of the Plaintiff's qualified written requests or taking the appropriate action necessary upon the receiving of the Plaintiff's inquiry." Pl.'s Original Pet. 3. Henderson's petition does not state that the correspondence sent to Freedom Mortgage contained any of the required components of a QWR as defined in § 2605(e)(1)(B). *See Hill*, 2011 WL 5869730, at *3; *see also Henderson*, 974 F. Supp. 2d at 1018 ("The court . . . cannot determine from [Plaintiff's] conclusory allegations whether the letters he sent . . . qualify as actionable QWRs under RESPA because he does not state what information was requested or to whom the requests or information were sent."). Further, Henderson fails to allege she suffered actual damages resulting from the alleged RESPA violation, and she pleads no "facts giving rise to a reasonable inference that she suffered actual damages" from the violation. *Nelson v. Wells Fargo Bank, N.A.*, 2017 WL 3405525, at *3 (N.D. Tex. Aug. 7, 2017).

Henderson also pleads a violation 24 C.F.R. § 3500.21(e), which was a Department of Housing and Urban Development ("HUD") regulation promulgated under the authority of RESPA. *See Beacham v. Bank of Am., N.A.*, 2012 WL 2358299, at *3 n.1 (N.D. Tex. May 25, 2012), *rec. adopted*, 2012 WL 2362619 (N.D. Tex. June 21, 2012). However, in 2010 RESPA was amended pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act. *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254, 260 (S.D.N.Y. Jan. 12, 2017)

7

("The Act created the Consumer Financial Protection Bureau (the "CFPB"), which was tasked with prescribing rules and regulations, as well as interpretations, as may be necessary to achieve RESPA's purpose.") Indeed, authority for rulemaking, enforcement, and compliance of RESPA was transferred from HUD to the CFPB. *See* Removal of Regulations Transferred to the Consumer Fin. Prot. Bureau, 79 Fed. Reg. 34,224-01 (July 16, 2014). As this relates to Henderson, the regulation under which she pleads, 24 C.F.R. § 3500.21, was removed and declared no longer operative, and she has not identified another regulation that Freedom Mortgage violated by allegedly not responding to a QWR. Therefore, Freedom Mortgage's motion for judgment on the pleadings should be granted as to Henderson's claims under RESPA and any associated regulation.

*Claims Under the NHA*

Henderson next asserts claims under the NHA. 12 U.S.C. §§ 1701 *et seq*. First, Henderson alleges that Freedom Mortgage violated 24 C.F.R. § 203.355, a HUD regulation promulgated under the authority of the NHA. *Huerta v. CitiMortgage, Inc*., 2011 WL 13228994, at *2 (N.D. Tex. Dec. 12, 2011). Second, she claims Freedom Mortgage violated 12 U.S.C. § 1715v, a provision of the NHA. With respect to any of Henderson's claims under HUD regulations, "[t]he regulations promulgated under the National Housing Act govern relations between the mortgagee and the government, and give the mortgagor no claim for duty owed or for the mortgagee's failure to follow said regulations." *Mitchell v. Chase Home Fin., LLC*, 2008 WL 623395, at *3 (N.D. Tex. Mar. 4, 2008)

8

(Kinkeade, J.) (citing *Roberts v. Cameron-Brown Co.*, 556 F.3d 356, 360-61 (5th Cir. 1977). With respect to any claim under the NHA itself, "no private cause of action can be implied from the National Housing Act." *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 758-59 (5th Cir. 1987); *Beacham*, 2012 WL 2358299, at *4 (noting that "[i]n the Fifth Circuit, courts have consistently held that a borrower does not have a private cause of action under [1] the [NHA] or [2] any of its accompanying regulations"). Because there is no private right of action for a violation of the National Housing Act or its associated regulations, Freedom Mortgage's motion for judgment on the pleadings should be granted as to Henderson's claims under that statute.

*Claims under the UMRA*

Next, Henderson asserts claims under the UMRA, 25 U.S.C. §§ 1501-1571. The UMRA states that "no provision of this Act shall be construed to create any right or benefit, substantive or procedural, enforceable by any person in any administrative or judicial action." 2 U.S.C. § 1571(b)(2); *see also Pipkins v. Bank of Am., N.A.*, 2012 WL 12893042, at *3 (N.D. Tex. Nov. 15, 2012) (dismissing claim under the UMRA after recognizing it creates no private right of action); *Beacham*, 2012 WL 2358299, at *4 (same); *Banks v. Wells Fargo Bank N.A.*, 2018 WL 1427079, at *3-4 (N.D. Tex. Mar. 21, 2018) (same). Freedom Mortgage's motion for judgment on the pleadings also should be granted as to Henderson's claims under the UMRA.

9

*Claims Under the Texas Property Code and the TDCA*

Henderson next claims that Freedom Mortgage "by and through its representatives, employees, and agents wrongfully accelerated the Plaintiff's Note and Deed of Trust and scheduled a foreclosure date on Plaintiff's residence for February 6, 2018 in violation of" the Texas Property Code and the Texas Debt Collection Act. Pl.'s Original Pet. 4.

Henderson's conclusory allegations of violations of "section 51" of the Texas Property Code do not satisfy her pleading burden. *See Banks*, 2018 WL 1427079, at *4 ("Plaintiff's claim under the Texas Property Code fails . . . . Chapter 51 contains more than fifteen subsections and [Plaintiff] does not point to the particular subsection that she believes Wells Fargo violated. Nor does she plead any facts in connection with her Texas Property Code claim; again, she states only that Wells Fargo violated Chapter 51."). Moreover, even giving Henderson the benefit of the doubt and presuming she pleads under section 51.002—the statutory provision that sets forth the requirements for conducting a foreclosure sale under a deed of trust, this section "does not provide a private right of action." *Solis v. U.S. Bank, N.A.*, 2017 WL 4479957, at *2 (S.D. Tex. June 23, 2017); *see also Huerta*, 2011 WL 13228994, at *4 (presuming plaintiff attempted to plead claim under section 51.002 where complaint failed to identify specific section of Texas Property Code).

To the extent Henderson asserts a claim for wrongful foreclosure, Henderson has failed to allege any facts that satisfy the elements of such a claim.

10

*See Charter Nat'l Bank-Hou. v. Stevens*, 781 S.W.2d 368, 371 (Tex. App.—Houston [14th. Dist.] 1990, writ denied) (reciting elements of wrongful foreclosure as: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price"); *Huerta*, 2011 WL 13228994, at *4 ("Plaintiff makes bare, conclusory, and generalized allegations of . . . improper acceleration[] and improper foreclosure, and fails to support these allegations with facts. Her wrongful foreclosure claim is therefore subject to dismissal for failure to state a claim."). In particular, Henderson fails to identify a specific defect in the foreclosure sale proceedings and does not allege that her home sold for a grossly inadequate selling price. Additionally, Henderson, who admits she became "delinquent in her mortgage payments," Pl.'s Original Pet. 2, has failed to allege facts supporting her assertion that the acceleration of the Deed of Trust was otherwise unlawful. Because Henderson has failed to state a legally cognizable claim under the Texas Property Code or for wrongful foreclosure, Freedom Mortgage's motion for judgment on the pleadings should be granted as to those claims.

      Henderson also alleges a violation under the TDCA. Tex. Fin. Code Ann. §§ 392.001-392.404. Generally, "[t]he TDCA allows a consumer to sue a debt collector attempting to collect a debt for threats, coercion, oppression, harassment, abuse, unfair or unconscionable collection methods, or fraudulent, deceptive or misleading misrepresentations made in connection with the

11

collection of a debt." *Huerta*, 2011 WL 13228994, at *3. Here, Henderson alleges a violation of section 392.301(a)(8), which provides, in relevant part, that "[i]n a debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices: . . . threatening to take an action prohibited by law." However, the TDCA provides that a debt collector is not prevented from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." Tex. Fin. Code Ann. § 392.301(b)(3).

Thus, in order to state a claim for a violation of the TDCA, a plaintiff must allege specific acts or practices prohibited by the statue. *See Coleman v. Bank of Am., N.A.*, 2011 WL 2516169, at *3 (N.D. Tex. May 27, 2011). Here, Henderson has failed to allege Freedom Mortgage made any unlawful threats. Her petition asserts that the "wrongful" acceleration and foreclosure violated the TDCA. These conclusory allegations are insufficient to state a claim under the statute. *See Banks*, 2018 WL 1427079, at *4 ("[Plaintiff] fails to plead that Defendant threatened her at all, much less by taking an action prohibited by law. Plaintiff states only that Defendant violated the Act, but provides no factual support for her claim . . . . Conclusory statements are not sufficient to state a claim, and the Court cannot draw a reasonable inference that [Defendant] is liable under the TDCA based on the information in Plaintiff's complaint."). With respect to the "strange man" who told Henderson's relative to vacate the Property, Henderson does not allege this was a threat in violation of the TDCA. *See* Pl.'s Original Pet. 3.

As such, Freedom Mortgage's motion for judgment on the pleadings should be granted as to Henderson's claims under the TDCA.[2]

### *Fraud*

Freedom Mortgage argues Henderson failed to state a claim for fraud but acknowledges that she does not formally name the cause of action in her petition. The Court determines that Henderson has not asserted a fraud claim. To the extent her allegations could be construed to plead a fraud claim, those allegations fail to meet the heightened pleading standard under Federal Rule of Civil Procedure 9. Fed. R. Civ. P. 9 ("In alleging fraud . . . a party must state with particularity the circumstances constituting fraud . . . .").

### *Injunctive Relief*

Lastly, Henderson requests injunctive relief. However, "[a] request for injunctive relief under Texas law is not in and of itself a cause of action, but instead necessarily depends on an underlying cause of action. *Beacham*, 2012 WL 2358299, at *5 (citing cases). Here, because Henderson has not sufficiently pleaded a single cause of action against Freedom Mortgage or First Mortgage, "there is no underlying cause of action for which the Court can provide this equitable remedy." *Id*. As such, Henderson is not entitled to an injunction.

---

[2] The Court's determination that Henderson has failed to plead a TDCA claim because of her failure to allege specific and unlawful coercion or threats by Freedom Mortgage pretermits the Court's discussion of Freedom Mortgage's first and third bases for dismissal: that Henderson's unsupported allegations do not trump the affidavit in support of the substitute trustee's sale; and that Henderson's TDCA claim is barred by the independent-injury rule. Def.'s Br. 11, ¶¶ 34 & 12-13, ¶¶ 36-39.

## Recommendation

The District Court should GRANT Defendants' motions for judgment on the pleadings (ECF Nos. 12 & 17) and dismiss with prejudice Henderson's claims against Freedom Mortgage Corporation and First Mortgage Corporation in their entirety.

**SO RECOMMENDED**.

February 27, 2019.

_____
REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service of the findings, conclusions, and recommendation. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).